NO. 07-02-0072-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



SEPTEMBER 11, 2002


______________________________



TAMMY TOWNSLEY CHEEK
,




 Appellant


v.



THE STATE OF TEXAS, 




 Appellee

_________________________________



FROM THE 64TH DISTRICT COURT OF HALE COUNTY;



NO. A-14198-0109; HON. JACK R. MILLER, PRESIDING


_______________________________



Before QUINN and REAVIS, J.J., and BOYD, S.J. (1)

 ON MOTION FOR REHEARING

 Appellant Tammy Townsley Cheek has filed a motion for rehearing of our dismissal
of her appeal of her conviction for theft. We dismissed that appeal because she pled guilty
and was not assessed a sentence that exceeded the plea bargain agreement. Therefore,
she was required to comply with Texas Rule of Appellate Procedure 25.2(b)(3) which
requires that she recite that she was appealing based upon jurisdictional defects, that the
substance of her appeal was raised by written motion and ruled on before trial, or that the
trial court granted her permission to appeal. However, she filed only a general notice of
appeal which we determined precluded our jurisdiction of the matter. 

 In her motion for rehearing, appellant contends that her notice of appeal is based
on the involuntariness of her plea and that, in her handwritten notice of appeal, she clearly
stated that her grounds for appeal were ineffective assistance of counsel/involuntariness
of her plea of guilt. However, the Court of Criminal Appeals held in Cooper v. State, 45
S.W.3d 77(Tex.Crim.App. 2001), that Rule 25.2(b) does not permit the voluntariness of the
plea to be raised on appeal. Id. at 83. Although appellant cites to the dissenting opinion
in that case in support of her argument, we have no authority to ignore the clear
pronouncement of that court. 

 Because we remain convinced that we have no jurisdiction to consider this appeal,
we overrule appellant's motion for rehearing. 

 

 Brian Quinn

 Justice

 

Do not publish.
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't
Code Ann. § 75.002(a)(1) (Vernon Supp. 2002). 



idence, that he acted out of necessity. Though no one objected to that aspect of the
charge, the State nonetheless concedes on appeal that the instruction was erroneous. See
Stefanoff v. State, 78 S.W.3d 496, 500 (Tex. App.-Austin 2002, pet. ref'd) (holding that
necessity is a statutory defense, and if the defendant presents some evidence on each
element of the defense, then the burden shifts to the State to disprove the defense beyond
a reasonable doubt). However, it further argues that because no one objected, the mistake
cannot result in reversal unless it caused appellant to suffer egregious harm. See Degrate
v. State, 86 S.W.3d 751, 754 (Tex. App.-Waco 2002, pet. ref'd) (describing egregious harm
as that which affects the very basis of the case, deprives the defendant of a valuable right,
or vitally affects a defensive theory). We agree with the State and overrule the issue.

 It is a defense to prosecution that the conduct in question was justified. Tex. Pen.
Code Ann. §9.02 (Vernon 2003). Additionally, conduct is justified when the actor
reasonably believes that it is immediately necessary to avoid imminent harm. Id. §9.22(1). 
Next, for the harm to be imminent it must be impending, not pending; that is, it must be on
the "point of happening, not about to happen." Smith v. State, 874 S.W.2d 269, 272-73
(Tex. App.-Houston [14th Dist.] 1994, pet. ref'd). There must exist an emergency situation
requiring immediate action or a split second decision to avoid the harm. Id.; accord,
Stefanoff v. State, 78 S.W.3d at 501. And, whether the situation is of that ilk is determined
from the standpoint of the accused. Pennington v. State, 54 S.W.3d 852, 857 (Tex. App.-
Fort Worth 2001, pet. ref'd); Gonzalez v. State, 2 S.W.3d 600, 605 (Tex. App.-Texarkana
1999, pet. ref'd). Yet, the defendant's belief that his conduct was immediately necessary
may be deemed unreasonable as a matter of law if the undisputed facts demonstrate a
complete absence of immediate necessity or imminent harm. Arnwine v. State, 20 S.W.3d
155, 159 (Tex. App.-Texarkana 2000, no pet.); Brazelton v. State, 947 S.W.2d 644, 648-49
(Tex. App.-Fort Worth 1997, no pet.). 

 Appellant alleges that the record contained sufficient evidence to warrant the charge
on necessity because children lived in the home and were to return home from school "any
minute." Because they often brought friends home with them, he perceived the need to
remove the gun from their reach to avoid potential injury. Yet, nothing in the record
suggests, much less illustrates, that any of the children were home or in the house at the
time appellant saw the weapon. Nor is there evidence suggesting that appellant thought
that any children were at home. Again, he simply believed that they would be arriving "at
any minute." (2) 

 We hold, as a matter of law, that this evidence, when viewed in a light most
favorable to appellant and from his perspective, does not indicate that there existed some
harm that was on the point of occurring and which necessitated a split second decision. 
Nor does it arise to a level of something about to happen for several contingencies had yet
to transpire. Not only was there a need for a child to arrive home, but also the gun had to
have remained at its location and the child had to have ventured into the room wherein it
lay and perceived it. Given these contingencies, the evidence permits one to reasonably
infer no more than that appellant feared the possibility of or potential for harm and acted
in response thereto. That, however, falls short of the imminency contemplated under the
defense of necessity. See Garcia v. State, 972 S.W.2d 848, 849 (Tex. App.-Beaumont
1998, no pet.) (holding that fear induced by one's presence in a high crime area is not
sufficient evidence of an immediate necessity to avoid imminent harm so as to justify
unlawfully carrying a handgun). Consequently, no evidence existed to entitle appellant to
an instruction on the defense in the first place. And, because he was not entitled to such
an instruction, we cannot say that he was egregiously harmed when the trial court told the
jury that he had the burden of proving the defense. (3)

Issues 5 and 6 - Ineffective Assistance of Counsel


 In his fifth and sixth issues, appellant asserts that his counsel was ineffective in
failing to object to the misstatement in the jury charge about which we discussed in the first
four issues. Yet, having determined that appellant was not entitled to the charge, we
cannot say that his attorney erred in failing to object to its wording. See Young v. State,
991 S.W.2d 835, 839 (Tex. Crim. App. 1999) (holding that because the defendant was not
entitled to an instruction on the defense of necessity, counsel was not ineffective in failing
to request one). So, the issues are overruled. 

Issues 7, 8 & 9 - Motion to Suppress


 In his final three issues, appellant attacks the trial court's decision to deny his motion
to suppress evidence. We overrule them as well. 

 Below, at the hearing to suppress, appellant argued that the evidence of the firearm
was subject to suppression because the officers had no basis to temporarily detain him and
search his person. Here, he contends that suppression was required since the officers had
no basis to initially enter the premises. Nothing is said, in his brief, about the temporary
detention and Terry (4) frisk other than the comment that whether the officers had "probable
cause to search, or even reasonable suspicion to detain, is irrelevant." Nor does he
mention the authority (or lack thereof) of the officers to initially enter upon the property as
grounds warranting exclusion of the evidence in his written motion to suppress. Given this,
the grounds underlying his complaint at trial do not comport with those uttered on appeal. 
Thus, his complaint about the trial court's refusal to suppress the evidence was waived. 
Goff v. State, 931 S.W.2d 537, 551 (Tex. Crim. App. 1996) (holding that if trial objections
do not comport with arguments on appeal, error is not preserved). 

 Nevertheless, and assuming the grounds for error were preserved, we review the
trial court's ruling on the motion to suppress under the standard announced in Guzman v.
State, 955 S.W.2d 85 (Tex. Crim. App. 1997). In doing so, we give almost total deference
to the trial court's findings of historical fact and review de novo its application of the law to
the facts. Id. at 89. And, when no findings of fact are executed, as here, we must also
view the evidence in the light most favorable to the trial court's ruling. State v. Ross, 32
S.W.3d 853, 855 (Tex. Crim. App. 2000).

 Both our federal and state constitutions protect one against unreasonable searches
and seizures, but that protection exists only if the individual has a reasonable expectation
of privacy in the thing searched. Oliver v. United States, 466 U.S. 170, 177, 104 S.Ct.
1735, 1740-41, 80 L.Ed.2d 214, 223 (1984); Villareal v. State, 935 S.W.2d 134, 138 (Tex.
Crim. App. 1996). If there is no such expectation, there is no constitutional protection. 
Rosalez v. State, 875 S.W.2d 705, 713 (Tex. App.-Dallas 1993, pet. ref'd) (stating that
because there is no reasonable expectation of privacy attaching to an open field, no Fourth
Amendment protection extends to such an area). Furthermore, the burden lies with the
accused to establish this expectation. Villareal v. State, 935 S.W.2d at 138. 

 It is beyond dispute that one has such an expectation of privacy in his home. Oliver
v. United States, 466 U.S. at 178, 104 S.Ct. at 1741, 80 L.Ed.2d at 224. So too is it
indisputable that this expectation extends to the curtilage surrounding the home. (5) Yet, the
restriction against intruding upon one's curtilage has its limits. For instance, it does not
prevent a police officer from approaching and knocking upon the front door of a home. 
Cornealius v. State, 900 S.W.2d 731, 733-34 (Tex. Crim. App. 1995). This is so because
the police have the same right as any other person to enter onto residential property and
walk up to the front door. Bower v. State, 769 S.W.2d 887, 897 (Tex. Crim. App.1989),
overruled on other grounds by Heitman v. State, 895 S.W.2d 681 (Tex. Crim. App. 1991);
Watts v. State, 56 S.W.3d 694, 699-700 (Tex. App.-Houston [14th Dist.] 2001), reversed
on other grounds, 99 S.W.3d 604 (Tex. Crim. App. 2003); Nored v. State, 875 S.W.2d 392,
396 (Tex. App.-Dallas 1994, pet. ref'd). Because entry is impliedly authorized, there exists
no reasonable expectation with regard to things observed by those on the pathway to the
house. Bower v. State, 769 S.W.2d at 897. However, the authorization to enter may not
exist if the occupant made manifest his intent to restrict access to the area. Id.; Nored v.
State, 875 S.W.2d at 397 (stating that if the person in possession of the property has not
made express orders prohibiting any form of trespass, and if the police follow the usual
path to the front door, then the police have not violated the person's Fourth Amendment
rights). 

 There is also precedent extending the authority to approach one's door and knock
to include the back door. For instance, in Long v. State, 532 S.W.2d 591 (Tex. Crim. App.
1975), the sheriff first went to the front door to inquire about private aircraft flights in the
area. When no one answered the knock, he and his deputy walked around to the back
door and knocked. When no one answered again, they decided to leave. Walking back
around the house, they felt a blast of hot air and smelled marijuana coming from an open
window. Furthermore, the window blinds were also open, and the officers looked into the
room and saw marijuana on the floor and stacked around the walls. The Court of Criminal
Appeals affirmed the trial court's refusal to suppress the evidence discovered because the
acts described did not constitute a search. Id. at 594-95.

 A like conclusion was reached in Atkins v. State, 882 S.W.2d 910 (Tex. App.-
Houston [1st Dist.] 1994, pet. ref'd). There, two officers proceeded to the appellant's
residence to investigate an anonymous tip. One went to the front door and the other to the
back door in an effort to contact the occupant. To arrive at the back door, the officer had
to pass through a fence, which he did. At that time, appellant left the house, observed the
officer, dropped an object, and thereafter re-entered the house. The officer picked the
object up, recognized it as contraband, and entered the house to arrest appellant. Because
both officers were attempting to contact the occupant and nothing indicated the officer's
view of the backyard was blocked by the fence, "the officer's viewing of appellant's conduct
was not a search" according to the court of appeals. Id. at 913. 

 Thus, an officer can enter the curtilage of a house in an effort to contact its
occupants. Buchanan v. State, 129 S.W.3d 767, 773 (Tex. App.-Amarillo 2004, pet. ref'd). 
This is true when the occupant has not manifested his intent to restrict access by locking
a gate or posting signs informing the officer he is not invited or the officer does not deviate
from the normal path of traffic. Id. 

 Here, the officers were responding to a complaint by the manager of the Housing
Authority (which operated the property) about men smoking marijuana on a front porch of
a particular house. When the officers arrived, they saw no one in the front of the house and
proceeded to drive around the back through an alley. There, they could see a group in the
backyard. So the officers disembarked from their vehicle, walked through "an opening in
the fence," and approached the group. There was no gate prohibiting their entrance; nor
was there evidence of a sign warning them against trespassing. And, to the extent that the
fence itself could be perceived as a barrier suggesting the desire for privacy, it did not
prevent the officers from seeing individuals in the backyard and it had an opening large
enough for people to venture through. 

 In view of the foregoing, the situation before us is akin to those in Long and Atkins. 
Any interests the occupants had in the privacy of their backyard was lost given the officers'
authority to contact them about the complaint, their visibility in the backyard, and the
opening in the fence. Thus, we cannot say that the officers violated either the constitutional
or statutory rights of appellant when they entered the premises under these circumstances. 


 Accordingly, the judgment of the trial court is affirmed.


 Brian Quinn 

 Justice

Publish.
1. The residence was that of appellant's mother. Appellant was living with his mother as were five of
her grandchildren. 
2. To the extent that one witness testified that she saw a child approaching the house, we find this
evidence of little import for several reasons. First, it does not show that the child was in the house or
anywhere near the weapon. Nor does it show that appellant saw the child or was aware of his or her presence
at the time. And, given that we must view the evidence from appellant's perspective, what others saw but he
did not can hardly be considered as influencing his perception of the situation. 
3. Indeed, it could be said that appellant had an opportunity for a windfall to which the law did not
actually afford him, and in the words of J. P. Driskill, "that's the luck of the draw."
4. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
5. Curtilage is defined as the area around the home to which the activity of home life extends. Oliver
v. United States, 466 U.S. 170, 182 n.12, 104 S.Ct. 1735, 1743 n.12, 80 L.Ed.2d 214, 226 n.12 (1984);
Rosalez v. State, 875 S.W.2d 705, 713 (Tex. App.-Dallas 1993, pet. ref'd).