Affirmed and Opinion filed September 12, 2002









Affirmed and Opinion filed September 12, 2002.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO.
14-02-00208-CR

____________

 

THE STATE OF TEXAS,
Appellant

 

V.

 

SANDRO PEYRANI, Appellee

__________________________________________________

 

On
Appeal from the 338th District Court

Harris County, Texas

Trial
Court Cause No. 843,214

__________________________________________________

 

O
P I N I O N

The
State appeals the suppression of marijuana in its prosecution of defendant, Sandro Peyrani, for possession of
between 50 and 200 pounds of marijuana.  We affirm.

                                                              BACKGROUND








Police
received a tip that large quantities of marijuana were being stored at and
transported from a house in Harris County. 
They began surveillance on the house and observed a white Suburban back
into the front driveway, around the house, and out of sight into the
backyard.  They also observed eight to
ten people walking back and forth from the front yard to the backyard.[1]  The house and yard are surrounded by a
six-foot fenceBchain link around the front and wooden privacy around the
back.  Thus, police and members of the
public could not see any of the activity in the backyard.

Several
hours after surveillance began, police observed a car back into the driveway of
the house.  Two men left the car and
walked to the backyard, eventually carried a heavy-looking bag to the backyard,
and returned with two brick-like packages. 
One of the packages was wrapped in cellophane and contained what
appeared to be marijuana.  After the men
left the house, police stopped their car at a nearby restaurant and found 11.45
pounds of marijuana.  The two men were
arrested.

After
this arrest, police remaining on surveillance decided not to request a search
warrant.  Instead, they decided to
attempt to get consent to search the house. 
Two officers dressed in raid jackets, Officer Fattig
and Officer Pena, walked through the open front gate at the driveway and down
the front walkway.  Officer Pena
testified that while walking, he could see the front door was open, although a
burglar bar door was closed over the entrance. 
Officer Pena could not see anyone in the house through the burglar bars.
 

Officer
Pena testified that he and Officer Fattig never
completed walking to the front door. 
Instead, they saw a man emerging along the side of the house from the
backyard.  The officers stepped off the
front walkway, onto the grass, and approached the man.  Officer Pena asked him in Spanish whether he
owned the home, received a negative answer, and instructed the man to stay
there.  The officers did not inquire who
the owner was or where the owner might be found. 








Both
officers testified that they could hear voices and, from their earlier
surveillance, knew persons were in the backyard.  The officers walked into the backyard,
without ever knocking on the front door or otherwise announcing their presence.  When they rounded the back corner of the
house, they saw Peyrani and several other men loading
bundles of marijuana into the white Suburban. 
Both officers testified that they walked into the backyard only to
obtain consent to search and did not expect to find marijuana, despite their observations
throughout the day. 

Before
trial, the trial court granted Peyrani=s
motion to suppress.  In announcing her
ruling, the trial court told the parties that the defendant had an expectation
of privacy in his backyard and that police had time to obtain a search
warrant.  The trial court was troubled
that the officers failed to knock at the front door, failed to ask the man at
the side of the house who and where the homeowner was, and failed to ask that
man for permission to go to the backyard.

                                                                         LAW

We
review a trial court=s ruling on a motion to suppress for abuse of discretion.  Villarreal v. State, 935 S.W.2d
134, 138 (Tex. Crim. App.
1996).  In this review, we afford almost
total deference to a trial court=s determination of historical facts, especially when based on
an evaluation of a witness=s credibility and demeanor. 
Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997). 
We afford the same deference to rulings based on mixed questions of law
and fact.  Id.  This is because the trial court is the sole trier of fact and judge of the credibility of witnesses and
the weight to be given their testimony.  State
v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App.
2000).  Thus, the trial court may
disbelieve any portion of a witness=s testimony, even if the testimony is uncontroverted.  Id. 
We may review de novo mixed questions of law and fact that do not turn
on an evaluation of credibility and demeanor. 
Id. at 856.








The
Fourth Amendment to the United States Constitution and Texas Constitution, Art.
I, '
9, protect against unreasonable searches and seizures.  This protection includes a home and the curtilage of the home. 
Oliver v. United States, 466 U.S. 170, 180 (1984); Gonzalez v.
State, 588 S.W.2d 355, 360 (Tex. Crim. App.
1979).  ACurtilage@
is the land immediately surrounding and associated with the home.  Gonzales, 588 S.W.2d at 360.  Thus, Peyrani=s
right to privacy in his backyard is protected by the Fourth Amendment and Texas
Constitution.

Police
have the right to approach and knock on a defendant=s
front door.  Cornealius
v. State, 900 S.W.2d 731, 733B34 (Tex.
Crim. App.
1995).  However, A[w]henever government agents enter into the curtilage they necessarily intrude upon the individual=s
reasonable expectation of privacy.@  Bower v. State,
769 S.W.2d 887, 897 (Tex.
Crim. App.
1989).  Once an officer deviates from the
usual route for the purpose of knocking on the front door, the officer loses
his status as an invitee.  Id.  

The
State argues that the officers were not conducting a search but were merely
seeking consent to search.  The State
cites Atkins v. State, 882 S.W.2d 910 (Tex. App.CHouston [1st Dist.] 1994, pet. ref=d) for the proposition that entry into a backyard to obtain
consent to search does not violate the Fourth Amendment.  In Atkins, one police officer
simultaneously approached the back door of a duplex apartment as a second
officer approached the front door.  As
the police officer turned the corner to the back, he saw the defendant drop
baggies of heroin and run inside the house. 
The trial court refused to suppress the heroin.  Showing deference to the trial court=s
ruling, the appellate court affirmed, noting that no evidence Aindicate[s]
anything other than the reasonable inference that the officer was attempting to
make a joint initial attempt . . . to contact the inhabitant of the house.@  Atkins, 882 S.W.2d
at 913.








Like
Atkins, we give deference to the trial court=s
ruling in this case because the question involves a mixed question of law and
fact.  The trial court questioned why the
officers did not first knock at the front door or ask the man they encountered
who owned the home and where the owner could be found.  The trial court may have disbelieved that the
officers proceeded to the backyard solely to contact the homeowner.  See Ross, 32 S.W.3d
at 856 (the trial court may Anot know exactly what the facts are, but does know (on the
basis of demeanor, appearance, and credibility) that they are not as the
witness describes@).  Because the trial
judge in this case (unlike Atkins) suppressed the evidence, and because
we must defer to that ruling, we do not find the Atkins outcome
controlling.

Other
courts have not found a Fourth Amendment violation when police to enter the defendant=s
backyard in search of a homeowner, but only after first approaching and
knocking at the front door.  See,
e.g., Gonzalez, 588 S.W.2d 355B57 (police first knocked at front door; rural property with
overgrown backyard; house was dark and there were no signs that anyone was
home); Long v. State, 532 S.W.2d 591, 594B95
(Tex. Crim. App. 1975)
(police first knocked on front door; rural property with an airstrip behind
it); Watts v. State, 56 S.W.2d 694, (Tex. App.CHouston [14th Dist.] 2001, pet. granted) (officers first knocked on front door;
home in wooded area; yard was poorly defined and lacked privacy fence;
unobstructed visibility of backyard).

We
find no abuse of discretion in the trial court=s suppression of the evidence. 
Accordingly, we overrule the State=s issue and affirm the trial court=s
judgment. 

 

 

/s/        Charles
W. Seymore

Justice

 

Judgment rendered and Opinion filed
September 12, 2002.

Panel consists of Chief Justice Brister
and Justices Fowler and Seymore.

Publish C Tex. R. App. P.
47.3(b).

 

 











[1]  Additionally,
according to Astipulated facts@ in the
clerk=s record, police followed
three males (including Peyrani) to a local grocery,
where the men purchased rolls of cellophane, packages of dryer sheets, boxes of
baking soda, and rolls of duct tape.