NO. 07-03-0122-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

DECEMBER 14, 2004
_____

DARYL M. WASHINGTON,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2002-439,684; HON. WILLIAM R. SHAVER, PRESIDING
_____

*Opinion*
_____

Before QUINN, REAVIS, and CAMPBELL, JJ.

Appellant Daryl M. Washington, a previously convicted felon, appeals his conviction for unlawfully possessing a firearm. He complains, through nine issues, of charge error, ineffective assistance of counsel, and the failure to grant his motion to suppress. We affirm the judgment of the trial court.

**Background**

On August 22, 2001, former Officer Ron McGlone and Lieutenant Billy Timms, of the Slaton Police Department, responded to a complaint from the manager of the Housing

Authority about several persons smoking marijuana outside of a residence.[1] When the officers arrived, no one was seen in front of the house. So the officers drove towards the back through an alley, saw individuals in the backyard, exited their vehicle, saw an opening in the fence and approached the group. While doing so, they noticed that one or more of the individuals appeared nervous. Also noticed was a partially smoked marijuana cigarette laying on a window sill, appellant standing closest to the cigarette, and a bulge in appellant's right front pocket. When initially asked what was in his pocket, appellant failed to respond. Then, an officer touched the bulge and asked again. Appellant replied that it was a handgun.

At trial, appellant argued that the gun belonged to his grandfather who was visiting due to the death of appellant's aunt. His grandfather allegedly had a fascination with guns and was also suffering from dementia. Appellant allegedly picked up the gun because he saw it laying on a coffee table, knew that his mother's grandchildren would be home from school soon, and was worried that they would come upon it.

### Issues 1, 2, 3, and 4 - Charge Error

In his first four issues, appellant complains that the trial court erred in instructing the jury about the defense of necessity. That is, when including the defense in the charge, the trial court stated that appellant had the burden to prove, by a preponderance of the evidence, that he acted out of necessity. Though no one objected to that aspect of the charge, the State nonetheless concedes on appeal that the instruction was erroneous. *See Stefanoff v. State,* 78 S.W.3d 496, 500 (Tex. App.–Austin 2002, pet. ref'd) (holding that

---

[1]The residence was that of appellant's mother. Appellant was living with his mother as were five of her grandchildren.

2

necessity is a statutory defense, and if the defendant presents some evidence on each element of the defense, then the burden shifts to the State to disprove the defense beyond a reasonable doubt). However, it further argues that because no one objected, the mistake cannot result in reversal unless it caused appellant to suffer egregious harm. *See Degrate v. State,* 86 S.W.3d 751, 754 (Tex. App.–Waco 2002, pet. ref'd) (describing egregious harm as that which affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory). We agree with the State and overrule the issue.

It is a defense to prosecution that the conduct in question was justified. TEX. PEN. CODE ANN. §9.02 (Vernon 2003). Additionally, conduct is justified when the actor reasonably believes that it is immediately necessary to avoid imminent harm. *Id.* §9.22(1). Next, for the harm to be imminent it must be impending, not pending; that is, it must be on the "point of happening, not about to happen." *Smith v. State*, 874 S.W.2d 269, 272-73 (Tex. App.–Houston [14th Dist.] 1994, pet. ref'd). There must exist an emergency situation requiring immediate action or a split second decision to avoid the harm. *Id.*; *accord, Stefanoff v. State,* 78 S.W.3d at 501. And, whether the situation is of that ilk is determined from the standpoint of the accused. *Pennington v. State,* 54 S.W.3d 852, 857 (Tex. App.–Fort Worth 2001, pet. ref'd); *Gonzalez v. State,* 2 S.W.3d 600, 605 (Tex. App.–Texarkana 1999, pet. ref'd). Yet, the defendant's belief that his conduct was immediately necessary may be deemed unreasonable as a matter of law if the undisputed facts demonstrate a complete absence of immediate necessity or imminent harm. *Arnwine v. State,* 20 S.W.3d 155, 159 (Tex. App.–Texarkana 2000, no pet.); *Brazelton v. State,* 947 S.W.2d 644, 648-49 (Tex. App.–Fort Worth 1997, no pet.).

3

Appellant alleges that the record contained sufficient evidence to warrant the charge on necessity because children lived in the home and were to return home from school "any minute." Because they often brought friends home with them, he perceived the need to remove the gun from their reach to avoid potential injury. Yet, nothing in the record suggests, much less illustrates, that any of the children were home or in the house at the time appellant saw the weapon. Nor is there evidence suggesting that appellant thought that any children were at home. Again, he simply believed that they would be arriving "at any minute."[2]

We hold, as a matter of law, that this evidence, when viewed in a light most favorable to appellant and from his perspective, does not indicate that there existed some harm that was on the point of occurring and which necessitated a split second decision. Nor does it arise to a level of something about to happen for several contingencies had yet to transpire. Not only was there a need for a child to arrive home, but also the gun had to have remained at its location and the child had to have ventured into the room wherein it lay and perceived it. Given these contingencies, the evidence permits one to reasonably infer no more than that appellant feared the possibility of or potential for harm and acted in response thereto. That, however, falls short of the imminency contemplated under the defense of necessity. *See Garcia v. State,* 972 S.W.2d 848, 849 (Tex. App.–Beaumont 1998, no pet.) (holding that fear induced by one's presence in a high crime area is not sufficient evidence of an immediate necessity to avoid imminent harm so as to justify

---

[2]To the extent that one witness testified that she saw a child approaching the house, we find this evidence of little import for several reasons. First, it does not show that the child was in the house or anywhere near the weapon. Nor does it show that appellant saw the child or was aware of his or her presence at the time. And, given that we must view the evidence from appellant's perspective, what others saw but he did not can hardly be considered as influencing his perception of the situation.

4

unlawfully carrying a handgun). Consequently, no evidence existed to entitle appellant to an instruction on the defense in the first place. And, because he was not entitled to such an instruction, we cannot say that he was egregiously harmed when the trial court told the jury that he had the burden of proving the defense.[3]

### Issues 5 and 6 - Ineffective Assistance of Counsel

In his fifth and sixth issues, appellant asserts that his counsel was ineffective in failing to object to the misstatement in the jury charge about which we discussed in the first four issues. Yet, having determined that appellant was not entitled to the charge, we cannot say that his attorney erred in failing to object to its wording. *See Young v. State*, 991 S.W.2d 835, 839 (Tex. Crim. App. 1999) (holding that because the defendant was not entitled to an instruction on the defense of necessity, counsel was not ineffective in failing to request one). So, the issues are overruled.

### Issues 7, 8 & 9 - Motion to Suppress

In his final three issues, appellant attacks the trial court's decision to deny his motion to suppress evidence. We overrule them as well.

Below, at the hearing to suppress, appellant argued that the evidence of the firearm was subject to suppression because the officers had no basis to temporarily detain him and search his person. Here, he contends that suppression was required since the officers had no basis to initially enter the premises. Nothing is said, in his brief, about the temporary detention and *Terry*[4] frisk other than the comment that whether the officers had "probable

---

[3]Indeed, it could be said that appellant had an opportunity for a windfall to which the law did not actually afford him, and in the words of J. P. Driskill, "that's the luck of the draw."

[4]*Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

cause to search, or even reasonable suspicion to detain, is irrelevant." Nor does he mention the authority (or lack thereof) of the officers to initially enter upon the property as grounds warranting exclusion of the evidence in his written motion to suppress. Given this, the grounds underlying his complaint at trial do not comport with those uttered on appeal. Thus, his complaint about the trial court's refusal to suppress the evidence was waived. *Goff v. State,* 931 S.W.2d 537, 551 (Tex. Crim. App. 1996) (holding that if trial objections do not comport with arguments on appeal, error is not preserved).

Nevertheless, and assuming the grounds for error were preserved, we review the trial court's ruling on the motion to suppress under the standard announced in *Guzman v. State,* 955 S.W.2d 85 (Tex. Crim. App. 1997). In doing so, we give almost total deference to the trial court's findings of historical fact and review *de novo* its application of the law to the facts. *Id.* at 89. And, when no findings of fact are executed, as here, we must also view the evidence in the light most favorable to the trial court's ruling. *State v. Ross,* 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

Both our federal and state constitutions protect one against unreasonable searches and seizures, but that protection exists only if the individual has a reasonable expectation of privacy in the thing searched. *Oliver v. United States,* 466 U.S. 170, 177, 104 S.Ct. 1735, 1740-41, 80 L.Ed.2d 214, 223 (1984); *Villareal v. State,* 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). If there is no such expectation, there is no constitutional protection. *Rosalez v. State,* 875 S.W.2d 705, 713 (Tex. App.–Dallas 1993, pet. ref'd) (stating that because there is no reasonable expectation of privacy attaching to an open field, no Fourth Amendment protection extends to such an area). Furthermore, the burden lies with the accused to establish this expectation. *Villareal v. State,* 935 S.W.2d at 138.

6

It is beyond dispute that one has such an expectation of privacy in his home. *Oliver v. United States,* 466 U.S. at 178, 104 S.Ct. at 1741, 80 L.Ed.2d at 224. So too is it indisputable that this expectation extends to the curtilage surrounding the home.[5] Yet, the restriction against intruding upon one's curtilage has its limits. For instance, it does not prevent a police officer from approaching and knocking upon the front door of a home. *Cornealius v. State,* 900 S.W.2d 731, 733-34 (Tex. Crim. App. 1995). This is so because the police have the same right as any other person to enter onto residential property and walk up to the front door. *Bower v. State,* 769 S.W.2d 887, 897 (Tex. Crim. App.1989), *overruled on other grounds by Heitman v. State,* 895 S.W.2d 681 (Tex. Crim. App. 1991); *Watts v. State,* 56 S.W.3d 694, 699-700 (Tex. App.–Houston [14th Dist.] 2001), *reversed on other grounds,* 99 S.W.3d 604 (Tex. Crim. App. 2003); *Nored v. State,* 875 S.W.2d 392, 396 (Tex. App.–Dallas 1994, pet. ref'd). Because entry is impliedly authorized, there exists no reasonable expectation with regard to things observed by those on the pathway to the house. *Bower v. State,* 769 S.W.2d at 897. However, the authorization to enter may not exist if the occupant made manifest his intent to restrict access to the area. *Id.; Nored v. State,* 875 S.W.2d at 397 (stating that if the person in possession of the property has not made express orders prohibiting any form of trespass, and if the police follow the usual path to the front door, then the police have not violated the person's Fourth Amendment rights).

There is also precedent extending the authority to approach one's door and knock to include the back door. For instance, in *Long v. State,* 532 S.W.2d 591 (Tex. Crim. App.

---

[5]Curtilage is defined as the area around the home to which the activity of home life extends. *Oliver v. United States,* 466 U.S. 170, 182 n.12, 104 S.Ct. 1735, 1743 n.12, 80 L.Ed.2d 214, 226 n.12 (1984); *Rosalez v. State,* 875 S.W.2d 705, 713 (Tex. App.–Dallas 1993, pet. ref'd).

1975), the sheriff first went to the front door to inquire about private aircraft flights in the area. When no one answered the knock, he and his deputy walked around to the back door and knocked. When no one answered again, they decided to leave. Walking back around the house, they felt a blast of hot air and smelled marijuana coming from an open window. Furthermore, the window blinds were also open, and the officers looked into the room and saw marijuana on the floor and stacked around the walls. The Court of Criminal Appeals affirmed the trial court's refusal to suppress the evidence discovered because the acts described did not constitute a search. *Id.* at 594-95.

A like conclusion was reached in *Atkins v. State,* 882 S.W.2d 910 (Tex. App.–Houston [1st Dist.] 1994, pet. ref'd). There, two officers proceeded to the appellant's residence to investigate an anonymous tip. One went to the front door and the other to the back door in an effort to contact the occupant. To arrive at the back door, the officer had to pass through a fence, which he did. At that time, appellant left the house, observed the officer, dropped an object, and thereafter re-entered the house. The officer picked the object up, recognized it as contraband, and entered the house to arrest appellant. Because both officers were attempting to contact the occupant and nothing indicated the officer's view of the backyard was blocked by the fence, "the officer's viewing of appellant's conduct was not a search" according to the court of appeals. *Id.* at 913.

Thus, an officer can enter the curtilage of a house in an effort to contact its occupants. *Buchanan v. State,* 129 S.W.3d 767, 773 (Tex. App.–Amarillo 2004, pet. ref'd). This is true when the occupant has not manifested his intent to restrict access by locking a gate or posting signs informing the officer he is not invited or the officer does not deviate from the normal path of traffic. *Id.*

8

Here, the officers were responding to a complaint by the manager of the Housing Authority (which operated the property) about men smoking marijuana on a front porch of a particular house.  When the officers arrived, they saw no one in the front of the house and proceeded to drive around the back through an alley.  There, they could see a group in the backyard.  So the officers disembarked from their vehicle, walked through "an opening in the fence," and approached the group.  There was no gate prohibiting their entrance; nor was there evidence of a sign warning them against trespassing.  And, to the extent that the fence itself could be perceived as a barrier suggesting the desire for privacy, it did not prevent the officers from seeing individuals in the backyard and it had an opening large enough for people to venture through.

In view of the foregoing, the situation before us is akin to those in *Long* and *Atkins.* Any interests the occupants had in the privacy of their backyard was lost given the officers' authority to contact them about the complaint, their visibility in the backyard, and the opening in the fence.  Thus, we cannot say that the officers violated either the constitutional or statutory rights of appellant when they entered the premises under these circumstances.

Accordingly, the judgment of the trial court is affirmed.

Brian Quinn
Justice

Publish.

9