

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00233-CR

_____

ADRIAN RAMOS JR., Appellant

V.

THE STATE OF TEXAS

---

On Appeal from Criminal District Court No. 2
Tarrant County, Texas
Trial Court No. 1726332

---

Before Sudderth, C.J.; Wallach and Walker, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

Appellant Adrian Ramos Jr. appeals his conviction for the possession of less than one gram of a controlled substance, namely methamphetamine. *See* Tex. Health & Safety Code Ann. § 481.115(a), (b). On appeal, Ramos argues in a single point that the trial court erred by overruling his motion to suppress certain evidence that was obtained following a purportedly unlawful detention. We affirm.

## I. BACKGROUND

On April 14, 2022, at 11:30 p.m., Haltom City police responded to multiple 911 calls reporting a vehicle that had been abandoned at an intersection. One of the 911 callers also reported hearing a man and a woman yelling.

When officers arrived, they found the vehicle in the intersection with its front doors open. The vehicle was dinging, indicating that the key had been left in the ignition. Upon closer inspection, they discovered that the key had actually been broken, and only part of it remained in the ignition.

One of the responding officers, Raymond Browder, heard voices and began walking towards them. After walking up the street past two or three houses, he saw a woman—later identified as Dee Ann Snyder, Ramos's girlfriend—emerge from behind a house. When Officer Browder asked Snyder if she was alright, she responded, "I don't know." Snyder appeared to be agitated and a little out of breath. She informed Officer Browder that Ramos had yanked her key out of the ignition while she was driving. She also told him that Ramos owned the house from behind

2

which she had emerged and that Ramos was currently behind the house. Based on Snyder's comments and demeanor, Officer Browder suspected that domestic violence may have occurred.

After another officer arrived at the house to stay with Snyder, Officer Browder walked along the driveway to the back of the house[1] in an effort to locate Ramos and to "make sure that everything was okay and safe." When Officer Browder reached the back of the house, he used his flashlight to look around the backyard and yelled Ramos's name. He then heard the chain link fence rattling and saw Ramos jumping over the fence into his neighbor's yard.

After Ramos jumped the fence, Officer Browder told him to stop and identified himself as a police officer. Ramos, who had concealed himself in his neighbor's yard, did not immediately comply. Ramos did not reveal himself or comply with Officer Browder's commands until Officer Browder told him that he had a police dog. Officer Browder instructed Ramos to climb back over the fence into his yard, but he was unable to do so. Another officer then instructed Ramos to get on the ground in the neighbor's yard, jumped the fence, and handcuffed him.

The officers then escorted Ramos to the front of the house, retrieved his ID from his wallet, and placed him in a patrol car. After running a check, officers discovered that Ramos had outstanding warrants for his arrest. Once the warrants

---

[1]There was no fence separating the front from the backyard.

were confirmed, officers placed Ramos under arrest and transported him to jail. When Ramos was being processed into jail, two red baggies containing a combined total of less than one gram of methamphetamine were found in his wallet.[2]

Based on the methamphetamine found in his wallet, Ramos was charged with possessing less than one gram of a controlled substance. He pled not guilty. Following a jury trial, he was convicted and sentenced to one year's confinement.[3] This appeal followed.

## II. DISCUSSION

In his sole point, Ramos argues that the trial court erred by denying his motion to suppress certain evidence—including the methamphetamine discovered in his wallet—as the fruits of an unlawful detention. We disagree.

### A. Standard of Review

We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress evidence. *State v. Martinez*, 570 S.W.3d 278, 281 (Tex. Crim. App. 2019). Because the trial judge is the sole trier of fact and judge of the witnesses' credibility and the weight to be given their testimony, *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007), we defer almost totally to a trial court's rulings on questions

---

[2]One baggie contained 0.24 grams of methamphetamine, and the other baggie contained 0.64 grams.

[3]The trial court suspended Ramos's sentence and placed him on three years of community supervision.

of historical fact and application-of-law-to-fact questions that turn on evaluating credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor, *Martinez*, 570 S.W.3d at 281.

When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013). Regardless of whether the motion was granted or denied, the prevailing party must be afforded the "strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence." *See State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). But we review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

## B. Applicable Law

Under the Fourth Amendment, a warrantless, investigative detention of a person must be justified by a reasonable suspicion. *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). "A police officer has reasonable suspicion to detain if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Id.*; *accord Lambeth v. State*, 221 S.W.3d 831, 836 (Tex. App.—Fort Worth 2007, pet. ref'd) (en banc op. on reh'g). "In determining whether an officer has reasonable suspicion to detain, we look at the totality of the

5

circumstances through an objective lens, disregarding the officer's subjective intent." *Matthews v. State*, 431 S.W.3d 596, 603 (Tex. Crim. App. 2014). "Although some circumstances may seem innocent in isolation, they will support an investigatory detention if their combination leads to a reasonable conclusion that criminal activity is afoot." *Id.*; *see also Derichsweiler*, 348 S.W.3d at 914.

## C. Analysis

Ramos contends that the police lacked reasonable suspicion to detain him after they found him in his neighbor's yard. However, the record shows otherwise.

The trial court identified—and the record reflects—several specific, articulable facts supporting Officer Browder's reasonable suspicion to detain Ramos:

- The situation was deemed serious enough by the Haltom City Police Department to immediately send officers to the vehicle's reported location;

- One of the 911 callers had reported hearing an argument between a man and a woman that involved yelling;

- Officers found an automobile in the middle of a residential intersection blocking the roadway; and

- Snyder admitted that she had been in an argument with Ramos and appeared "a bit distressed or excited" and "a little bit out of breath."

Beyond those noted by the trial court, the following additional facts supported Officer Browder's reasonable suspicion:

- The vehicle's front doors were wide open; there was a broken key in the ignition; and Snyder told Officer Browder that Ramos had yanked her key out of the ignition while she was driving the vehicle;

6

- When Officer Browder first encountered Snyder and asked her if she was alright, she responded, "I don't know"; and

- Ramos did not immediately yield to Officer Browder's authority and instead attempted to flee by jumping over the backyard fence into his neighbor's yard.[4]

Given all of the facts outlined above, Officer Browder could have reasonably suspected that Ramos had engaged in domestic violence. *See Derichsweiler*, 348 S.W.3d at 914.

Ramos argues that any suspicion of domestic violence could not have been reasonable because Snyder told the officers that no physical violence had occurred and repeatedly said "no" when they asked if Ramos had hit her. But it is not uncommon for victims of domestic violence to lie to police or to deny that they have been assaulted. *See Anderson v. City of W. Bend Police Dep't*, 774 F. Supp. 2d 925, 940 (E.D. Wis. 2011); *see also Fletcher v. Town of Clinton*, 196 F.3d 41, 52 (1st Cir. 1999) ("In domestic violence situations, officers may reasonably consider whether the victim [in denying she or he is in danger] is acting out of fear or intimidation, or out of some

---

[4]*See State v. Kerwick*, 393 S.W.3d 270, 276 (Tex. Crim. App. 2013) ("'[Flight] is not necessarily indicative of wrongdoing, but it is certainly suggestive of such' and may be considered among the totality of the circumstances in a reasonable-suspicion analysis." (quoting *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S. Ct. 673, 676 (2000))); *Washington v. State*, 660 S.W.2d 533, 535 (Tex. Crim. App. 1983) ("Flight from a law enforcement officer 'can provide in appropriate circumstances the key ingredient justifying the decision of a law enforcement officer to take action.'" (quoting *United States v. Vasquez*, 534 F.2d 1142, 1145 (5th Cir. 1976))); *Reyes v. State*, 899 S.W.2d 319, 324 (Tex. App.—Houston [14th Dist.] 1995, pet. ref'd) (stating that flight from a show of authority is a factor supporting the existence of a reasonable suspicion that an individual is involved in criminal activity).

desire to protect the abuser, both common syndromes."); *United States v. Lawrence*, 236 F. Supp. 2d 953, 963 (D. Neb. 2002) ("Even when the possible victim of domestic abuse assures the officer that she is in no danger, an officer is entitled to consider all the facts and is not required to take her statement at face value in assessing the potential threat of physical harm."); *cf. Kingsbury v. State*, 625 S.W.3d 686, 693 (Tex. App.—Fort Worth 2021, no pet.) (acknowledging that expert testimony is generally admissible in domestic-violence cases to explain, inter alia, victims' "recantations" and "lies to the police" (citing *Nwaiwu v. State*, No. 02-17-00053-CR, 2018 WL 3763899, at *3 (Tex. App.—Fort Worth Aug. 9, 2018, pet. ref'd) (mem. op., not designated for publication))). Thus, Officer Browder was not required to take Snyder's statements at face value in assessing whether Ramos had committed, or was likely to commit, an act of domestic violence. *See Lawrence*, 236 F. Supp. 2d at 963. And based on the articulable facts outlined above as well as his training and experience, he could have reasonably concluded that Ramos had committed an act of domestic violence notwithstanding Snyder's statements that no physical violence had occurred.[5]

---

[5]We note that a person can commit assault without actually hitting the victim. *See* Tex. Penal Code Ann. § 22.01(a)(2) (providing that a person commits assault if he "intentionally or knowingly threatens another with imminent bodily injury"). Thus, even if Officer Browder believed Snyder's statements that Ramos had not hit her, this would not preclude him from reasonably suspecting that an assault had occurred. *See id.*

8

To support his contention that the police lacked reasonable suspicion to detain him, Ramos also highlights the fact that at one point when he asked the police why he was being detained, Officer Browder responded that "we're working on figuring that out right now." But Officer Browder explained that he responded this way because he was still conducting an active investigation and did not know everything that Snyder might have told the other officers at that point. Thus, this statement was not—as Ramos has attempted to characterize it—an admission that Officer Browder lacked a legitimate reason for detaining him; rather, it was merely an acknowledgment that the investigation into the full extent of Ramos's potential criminal activity was currently ongoing.

Finally, Ramos asserts that Officer Browder "had no justifiable reason to go behind [his] house" or to enter his backyard in the first place. However, it is well settled that an officer may enter a property's curtilage—such as the backyard—in an effort to contact a resident. *See Long v. State*, 532 S.W.2d 591, 595 (Tex. Crim. App. 1975) (concluding that no illegal search had occurred when officers knocked on appellant's back door after receiving no answer at front door and then smelled marijuana coming from an open window on their way back to their vehicle); *Gonzalez v. State*, 588 S.W.2d 355, 359 (Tex. Crim. App. 1979) (concluding that no illegal search had occurred when officers approached front and back doors of residence in an attempt to contact residents); *Atkins v. State*, 882 S.W.2d 910, 913 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (holding that police officer did not

9

violate appellant's Fourth Amendment rights by entering his property's curtilage and walking towards his back door because the officer was attempting to contact the appellant, not to conduct a search). And the record reflects that Officer Browder was attempting to do just that. He needed to speak with Ramos as part of his investigation. By going to the back of the house to speak with Ramos, he did not violate Ramos's Fourth Amendment rights. *See Long*, 532 S.W.2d at 595; *Gonzalez*, 588 S.W.2d at 359; *Atkins*, 882 S.W.2d at 913.

In sum, considering the totality of the circumstances, we conclude that the police had reasonable suspicion to detain Ramos; thus, the challenged detention did not violate the Fourth Amendment. Having concluded that the detention was lawful, we likewise conclude that the trial court did not err by denying Ramos's motion to suppress. Accordingly, we overrule Ramos's sole point.

### III. CONCLUSION

Having overruled Ramos's sole point, we affirm the trial court's judgment.

/s/ Mike Wallach
Mike Wallach
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: June 19, 2025