NO. 07-03-0122-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



DECEMBER 14, 2004


______________________________



DARYL M. WASHINGTON, 



 Appellant


v.



THE STATE OF TEXAS, 
 


 Appellee

_________________________________



FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2002-439,684; HON. WILLIAM R. SHAVER, PRESIDING


_______________________________



Opinion


_______________________________



Before QUINN, REAVIS, and CAMPBELL, JJ.

 Appellant Daryl M. Washington, a previously convicted felon, appeals his conviction
for unlawfully possessing a firearm. He complains, through nine issues, of charge error,
ineffective assistance of counsel, and the failure to grant his motion to suppress. We affirm
the judgment of the trial court.

Background


 On August 22, 2001, former Officer Ron McGlone and Lieutenant Billy Timms, of the
Slaton Police Department, responded to a complaint from the manager of the Housing
Authority about several persons smoking marijuana outside of a residence. (1) When the
officers arrived, no one was seen in front of the house. So the officers drove towards the
back through an alley, saw individuals in the backyard, exited their vehicle, saw an opening
in the fence and approached the group. While doing so, they noticed that one or more of
the individuals appeared nervous. Also noticed was a partially smoked marijuana cigarette
laying on a window sill, appellant standing closest to the cigarette, and a bulge in
appellant's right front pocket. When initially asked what was in his pocket, appellant failed
to respond. Then, an officer touched the bulge and asked again. Appellant replied that it
was a handgun. 

 At trial, appellant argued that the gun belonged to his grandfather who was visiting
due to the death of appellant's aunt. His grandfather allegedly had a fascination with guns
and was also suffering from dementia. Appellant allegedly picked up the gun because he
saw it laying on a coffee table, knew that his mother's grandchildren would be home from
school soon, and was worried that they would come upon it. 

Issues 1, 2, 3, and 4 - Charge Error


 In his first four issues, appellant complains that the trial court erred in instructing the
jury about the defense of necessity. That is, when including the defense in the charge, the
trial court stated that appellant had the burden to prove, by a preponderance of the
evidence, that he acted out of necessity. Though no one objected to that aspect of the
charge, the State nonetheless concedes on appeal that the instruction was erroneous. See
Stefanoff v. State, 78 S.W.3d 496, 500 (Tex. App.-Austin 2002, pet. ref'd) (holding that
necessity is a statutory defense, and if the defendant presents some evidence on each
element of the defense, then the burden shifts to the State to disprove the defense beyond
a reasonable doubt). However, it further argues that because no one objected, the mistake
cannot result in reversal unless it caused appellant to suffer egregious harm. See Degrate
v. State, 86 S.W.3d 751, 754 (Tex. App.-Waco 2002, pet. ref'd) (describing egregious harm
as that which affects the very basis of the case, deprives the defendant of a valuable right,
or vitally affects a defensive theory). We agree with the State and overrule the issue.

 It is a defense to prosecution that the conduct in question was justified. Tex. Pen.
Code Ann. §9.02 (Vernon 2003). Additionally, conduct is justified when the actor
reasonably believes that it is immediately necessary to avoid imminent harm. Id. §9.22(1). 
Next, for the harm to be imminent it must be impending, not pending; that is, it must be on
the "point of happening, not about to happen." Smith v. State, 874 S.W.2d 269, 272-73
(Tex. App.-Houston [14th Dist.] 1994, pet. ref'd). There must exist an emergency situation
requiring immediate action or a split second decision to avoid the harm. Id.; accord,
Stefanoff v. State, 78 S.W.3d at 501. And, whether the situation is of that ilk is determined
from the standpoint of the accused. Pennington v. State, 54 S.W.3d 852, 857 (Tex. App.-
Fort Worth 2001, pet. ref'd); Gonzalez v. State, 2 S.W.3d 600, 605 (Tex. App.-Texarkana
1999, pet. ref'd). Yet, the defendant's belief that his conduct was immediately necessary
may be deemed unreasonable as a matter of law if the undisputed facts demonstrate a
complete absence of immediate necessity or imminent harm. Arnwine v. State, 20 S.W.3d
155, 159 (Tex. App.-Texarkana 2000, no pet.); Brazelton v. State, 947 S.W.2d 644, 648-49
(Tex. App.-Fort Worth 1997, no pet.). 

 Appellant alleges that the record contained sufficient evidence to warrant the charge
on necessity because children lived in the home and were to return home from school "any
minute." Because they often brought friends home with them, he perceived the need to
remove the gun from their reach to avoid potential injury. Yet, nothing in the record
suggests, much less illustrates, that any of the children were home or in the house at the
time appellant saw the weapon. Nor is there evidence suggesting that appellant thought
that any children were at home. Again, he simply believed that they would be arriving "at
any minute." (2) 

 We hold, as a matter of law, that this evidence, when viewed in a light most
favorable to appellant and from his perspective, does not indicate that there existed some
harm that was on the point of occurring and which necessitated a split second decision. 
Nor does it arise to a level of something about to happen for several contingencies had yet
to transpire. Not only was there a need for a child to arrive home, but also the gun had to
have remained at its location and the child had to have ventured into the room wherein it
lay and perceived it. Given these contingencies, the evidence permits one to reasonably
infer no more than that appellant feared the possibility of or potential for harm and acted
in response thereto. That, however, falls short of the imminency contemplated under the
defense of necessity. See Garcia v. State, 972 S.W.2d 848, 849 (Tex. App.-Beaumont
1998, no pet.) (holding that fear induced by one's presence in a high crime area is not
sufficient evidence of an immediate necessity to avoid imminent harm so as to justify
unlawfully carrying a handgun). Consequently, no evidence existed to entitle appellant to
an instruction on the defense in the first place. And, because he was not entitled to such
an instruction, we cannot say that he was egregiously harmed when the trial court told the
jury that he had the burden of proving the defense. (3)

Issues 5 and 6 - Ineffective Assistance of Counsel


 In his fifth and sixth issues, appellant asserts that his counsel was ineffective in
failing to object to the misstatement in the jury charge about which we discussed in the first
four issues. Yet, having determined that appellant was not entitled to the charge, we
cannot say that his attorney erred in failing to object to its wording. See Young v. State,
991 S.W.2d 835, 839 (Tex. Crim. App. 1999) (holding that because the defendant was not
entitled to an instruction on the defense of necessity, counsel was not ineffective in failing
to request one). So, the issues are overruled. 

Issues 7, 8 & 9 - Motion to Suppress


 In his final three issues, appellant attacks the trial court's decision to deny his motion
to suppress evidence. We overrule them as well. 

 Below, at the hearing to suppress, appellant argued that the evidence of the firearm
was subject to suppression because the officers had no basis to temporarily detain him and
search his person. Here, he contends that suppression was required since the officers had
no basis to initially enter the premises. Nothing is said, in his brief, about the temporary
detention and Terry (4) frisk other than the comment that whether the officers had "probable
cause to search, or even reasonable suspicion to detain, is irrelevant." Nor does he
mention the authority (or lack thereof) of the officers to initially enter upon the property as
grounds warranting exclusion of the evidence in his written motion to suppress. Given this,
the grounds underlying his complaint at trial do not comport with those uttered on appeal. 
Thus, his complaint about the trial court's refusal to suppress the evidence was waived. 
Goff v. State, 931 S.W.2d 537, 551 (Tex. Crim. App. 1996) (holding that if trial objections
do not comport with arguments on appeal, error is not preserved). 

 Nevertheless, and assuming the grounds for error were preserved, we review the
trial court's ruling on the motion to suppress under the standard announced in Guzman v.
State, 955 S.W.2d 85 (Tex. Crim. App. 1997). In doing so, we give almost total deference
to the trial court's findings of historical fact and review de novo its application of the law to
the facts. Id. at 89. And, when no findings of fact are executed, as here, we must also
view the evidence in the light most favorable to the trial court's ruling. State v. Ross, 32
S.W.3d 853, 855 (Tex. Crim. App. 2000).

 Both our federal and state constitutions protect one against unreasonable searches
and seizures, but that protection exists only if the individual has a reasonable expectation
of privacy in the thing searched. Oliver v. United States, 466 U.S. 170, 177, 104 S.Ct.
1735, 1740-41, 80 L.Ed.2d 214, 223 (1984); Villareal v. State, 935 S.W.2d 134, 138 (Tex.
Crim. App. 1996). If there is no such expectation, there is no constitutional protection. 
Rosalez v. State, 875 S.W.2d 705, 713 (Tex. App.-Dallas 1993, pet. ref'd) (stating that
because there is no reasonable expectation of privacy attaching to an open field, no Fourth
Amendment protection extends to such an area). Furthermore, the burden lies with the
accused to establish this expectation. Villareal v. State, 935 S.W.2d at 138. 

 It is beyond dispute that one has such an expectation of privacy in his home. Oliver
v. United States, 466 U.S. at 178, 104 S.Ct. at 1741, 80 L.Ed.2d at 224. So too is it
indisputable that this expectation extends to the curtilage surrounding the home. (5) Yet, the
restriction against intruding upon one's curtilage has its limits. For instance, it does not
prevent a police officer from approaching and knocking upon the front door of a home. 
Cornealius v. State, 900 S.W.2d 731, 733-34 (Tex. Crim. App. 1995). This is so because
the police have the same right as any other person to enter onto residential property and
walk up to the front door. Bower v. State, 769 S.W.2d 887, 897 (Tex. Crim. App.1989),
overruled on other grounds by Heitman v. State, 895 S.W.2d 681 (Tex. Crim. App. 1991);
Watts v. State, 56 S.W.3d 694, 699-700 (Tex. App.-Houston [14th Dist.] 2001), reversed
on other grounds, 99 S.W.3d 604 (Tex. Crim. App. 2003); Nored v. State, 875 S.W.2d 392,
396 (Tex. App.-Dallas 1994, pet. ref'd). Because entry is impliedly authorized, there exists
no reasonable expectation with regard to things observed by those on the pathway to the
house. Bower v. State, 769 S.W.2d at 897. However, the authorization to enter may not
exist if the occupant made manifest his intent to restrict access to the area. Id.; Nored v.
State, 875 S.W.2d at 397 (stating that if the person in possession of the property has not
made express orders prohibiting any form of trespass, and if the police follow the usual
path to the front door, then the police have not violated the person's Fourth Amendment
rights). 

 There is also precedent extending the authority to approach one's door and knock
to include the back door. For instance, in Long v. State, 532 S.W.2d 591 (Tex. Crim. App.
1975), the sheriff first went to the front door to inquire about private aircraft flights in the
area. When no one answered the knock, he and his deputy walked around to the back
door and knocked. When no one answered again, they decided to leave. Walking back
around the house, they felt a blast of hot air and smelled marijuana coming from an open
window. Furthermore, the window blinds were also open, and the officers looked into the
room and saw marijuana on the floor and stacked around the walls. The Court of Criminal
Appeals affirmed the trial court's refusal to suppress the evidence discovered because the
acts described did not constitute a search. Id. at 594-95.

 A like conclusion was reached in Atkins v. State, 882 S.W.2d 910 (Tex. App.-
Houston [1st Dist.] 1994, pet. ref'd). There, two officers proceeded to the appellant's
residence to investigate an anonymous tip. One went to the front door and the other to the
back door in an effort to contact the occupant. To arrive at the back door, the officer had
to pass through a fence, which he did. At that time, appellant left the house, observed the
officer, dropped an object, and thereafter re-entered the house. The officer picked the
object up, recognized it as contraband, and entered the house to arrest appellant. Because
both officers were attempting to contact the occupant and nothing indicated the officer's
view of the backyard was blocked by the fence, "the officer's viewing of appellant's conduct
was not a search" according to the court of appeals. Id. at 913. 

 Thus, an officer can enter the curtilage of a house in an effort to contact its
occupants. Buchanan v. State, 129 S.W.3d 767, 773 (Tex. App.-Amarillo 2004, pet. ref'd). 
This is true when the occupant has not manifested his intent to restrict access by locking
a gate or posting signs informing the officer he is not invited or the officer does not deviate
from the normal path of traffic. Id. 

 Here, the officers were responding to a complaint by the manager of the Housing
Authority (which operated the property) about men smoking marijuana on a front porch of
a particular house. When the officers arrived, they saw no one in the front of the house and
proceeded to drive around the back through an alley. There, they could see a group in the
backyard. So the officers disembarked from their vehicle, walked through "an opening in
the fence," and approached the group. There was no gate prohibiting their entrance; nor
was there evidence of a sign warning them against trespassing. And, to the extent that the
fence itself could be perceived as a barrier suggesting the desire for privacy, it did not
prevent the officers from seeing individuals in the backyard and it had an opening large
enough for people to venture through. 

 In view of the foregoing, the situation before us is akin to those in Long and Atkins. 
Any interests the occupants had in the privacy of their backyard was lost given the officers'
authority to contact them about the complaint, their visibility in the backyard, and the
opening in the fence. Thus, we cannot say that the officers violated either the constitutional
or statutory rights of appellant when they entered the premises under these circumstances. 


 Accordingly, the judgment of the trial court is affirmed.


 Brian Quinn 

 Justice

Publish.
1. The residence was that of appellant's mother. Appellant was living with his mother as were five of
her grandchildren. 
2. To the extent that one witness testified that she saw a child approaching the house, we find this
evidence of little import for several reasons. First, it does not show that the child was in the house or
anywhere near the weapon. Nor does it show that appellant saw the child or was aware of his or her presence
at the time. And, given that we must view the evidence from appellant's perspective, what others saw but he
did not can hardly be considered as influencing his perception of the situation. 
3. Indeed, it could be said that appellant had an opportunity for a windfall to which the law did not
actually afford him, and in the words of J. P. Driskill, "that's the luck of the draw."
4. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
5. Curtilage is defined as the area around the home to which the activity of home life extends. Oliver
v. United States, 466 U.S. 170, 182 n.12, 104 S.Ct. 1735, 1743 n.12, 80 L.Ed.2d 214, 226 n.12 (1984);
Rosalez v. State, 875 S.W.2d 705, 713 (Tex. App.-Dallas 1993, pet. ref'd). 



riority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 3 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:3;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 mso-bidi-language:EN-US;}
h4
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 4 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:4;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-style:italic;}
h5
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 5 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:5;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 mso-bidi-language:EN-US;
 font-weight:normal;}
h6
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 6 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:6;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 mso-bidi-language:EN-US;
 font-weight:normal;
 font-style:italic;}
p.MsoHeading7, li.MsoHeading7, div.MsoHeading7
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 7 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:7;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoHeading8, li.MsoHeading8, div.MsoHeading8
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 8 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:8;
 font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 mso-bidi-language:EN-US;}
p.MsoHeading9, li.MsoHeading9, div.MsoHeading9
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 9 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:9;
 font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoFootnoteText, li.MsoFootnoteText, div.MsoFootnoteText
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Footnote Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
p.MsoHeader, li.MsoHeader, div.MsoHeader
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Header Char";
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 tab-stops:center 3.25in right 6.5in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoFooter, li.MsoFooter, div.MsoFooter
 {mso-style-priority:99;
 mso-style-link:"Footer Char";
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 tab-stops:center 3.25in right 6.5in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoCaption, li.MsoCaption, div.MsoCaption
 {mso-style-noshow:yes;
 mso-style-priority:35;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 mso-pagination:widow-orphan;
 font-size:9.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-weight:bold;}
span.MsoFootnoteReference
 {mso-style-noshow:yes;
 mso-style-priority:99;
 vertical-align:super;}
p.MsoTitle, li.MsoTitle, div.MsoTitle
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:15.0pt;
 margin-left:0in;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpFirst, li.MsoTitleCxSpFirst, div.MsoTitleCxSpFirst
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpMiddle, li.MsoTitleCxSpMiddle, div.MsoTitleCxSpMiddle
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpLast, li.MsoTitleCxSpLast, div.MsoTitleCxSpLast
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:15.0pt;
 margin-left:0in;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoSubtitle, li.MsoSubtitle, div.MsoSubtitle
 {mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Subtitle Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoAcetate, li.MsoAcetate, div.MsoAcetate
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Balloon Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoNoSpacing, li.MsoNoSpacing, div.MsoNoSpacing
 {mso-style-priority:1;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-parent:"";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraph, li.MsoListParagraph, div.MsoListParagraph
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpFirst, li.MsoListParagraphCxSpFirst, div.MsoListParagraphCxSpFirst
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpMiddle, li.MsoListParagraphCxSpMiddle, div.MsoListParagraphCxSpMiddle
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpLast, li.MsoListParagraphCxSpLast, div.MsoListParagraphCxSpLast
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoQuote, li.MsoQuote, div.MsoQuote
 {mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Quote Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:black;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoIntenseQuote, li.MsoIntenseQuote, div.MsoIntenseQuote
 {mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Intense Quote Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:.65in;
 margin-bottom:14.0pt;
 margin-left:.65in;
 line-height:115%;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD .5pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleEmphasis
 {mso-style-priority:19;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:gray;
 font-style:italic;}
span.MsoIntenseEmphasis
 {mso-style-priority:21;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleReference
 {mso-style-priority:31;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 text-decoration:underline;
 text-underline:single;}
span.MsoIntenseReference
 {mso-style-priority:32;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 letter-spacing:.25pt;
 font-weight:bold;
 text-decoration:underline;
 text-underline:single;}
span.MsoBookTitle
 {mso-style-priority:33;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 letter-spacing:.25pt;
 font-weight:bold;}
p.MsoTocHeading, li.MsoTocHeading, div.MsoTocHeading
 {mso-style-noshow:yes;
 mso-style-priority:39;
 mso-style-qformat:yes;
 mso-style-parent:"Heading 1";
 mso-style-next:Normal;
 margin-top:24.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 mso-bidi-language:EN-US;
 font-weight:bold;}
span.Heading1Char
 {mso-style-name:"Heading 1 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 1";
 mso-ansi-font-size:14.0pt;
 mso-bidi-font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 font-weight:bold;}
span.Heading2Char
 {mso-style-name:"Heading 2 Char";
 mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 2";
 mso-ansi-font-size:13.0pt;
 mso-bidi-font-size:13.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading3Char
 {mso-style-name:"Heading 3 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 3";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading4Char
 {mso-style-name:"Heading 4 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 4";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.Heading5Char
 {mso-style-name:"Heading 5 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 5";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;}
span.Heading6Char
 {mso-style-name:"Heading 6 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 6";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 font-style:italic;}
span.Heading7Char
 {mso-style-name:"Heading 7 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 7";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.Heading8Char
 {mso-style-name:"Heading 8 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 8";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;}
span.Heading9Char
 {mso-style-name:"Heading 9 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 9";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.TitleChar
 {mso-style-name:"Title Char";
 mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Title;
 mso-ansi-font-size:26.0pt;
 mso-bidi-font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;}
span.SubtitleChar
 {mso-style-name:"Subtitle Char";
 mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Subtitle;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 font-style:italic;}
span.QuoteChar
 {mso-style-name:"Quote Char";
 mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Quote;
 color:black;
 font-style:italic;}
span.IntenseQuoteChar
 {mso-style-name:"Intense Quote Char";
 mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Intense Quote";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
p.NewDocument, li.NewDocument, div.NewDocument
 {mso-style-name:"New Document";
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;
 mso-bidi-language:EN-US;}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 font-family:"Calibri","sans-serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
span.SpellE
 {mso-style-name:"";
 mso-spl-e:yes;}
span.GramE
 {mso-style-name:"";
 mso-gram-e:yes;}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 font-size:10.0pt;
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:Arial;
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:Arial;}
 /* Page Definitions */
 @page
 {mso-footnote-separator:url("07-09-0054.cr%20opinion_files/header.htm") fs;
 mso-footnote-continuation-separator:url("07-09-0054.cr%20opinion_files/header.htm") fcs;
 mso-endnote-separator:url("07-09-0054.cr%20opinion_files/header.htm") es;
 mso-endnote-continuation-separator:url("07-09-0054.cr%20opinion_files/header.htm") ecs;}
@page Section1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-page-numbers:1;
 mso-title-page:yes;
 mso-footer:url("07-09-0054.cr%20opinion_files/header.htm") f1;
 mso-paper-source:0;}
div.Section1
 {page:Section1;}
@page Section2
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-title-page:yes;
 mso-footer:url("07-09-0054.cr%20opinion_files/header.htm") f2;
 mso-paper-source:0;}
div.Section2
 {page:Section2;}
 /* List Definitions */
 @list l0
 {mso-list-id:579028708;
 mso-list-type:hybrid;
 mso-list-template-ids:1591275394 -640492304 67698713 67698715 67698703 67698713 67698715 67698703 67698713 67698715;}
@list l0:level1
 {mso-level-number-format:alpha-upper;
 mso-level-text:"\(%1\)";
 mso-level-tab-stop:none;
 mso-level-number-position:left;
 margin-left:1.25in;
 text-indent:-.25in;}
@list l1
 {mso-list-id:1728143218;
 mso-list-type:hybrid;
 mso-list-template-ids:-956693604 1046119834 67698713 67698715 67698703 67698713 67698715 67698703 67698713 67698715;}
@list l1:level1
 {mso-level-number-format:alpha-lower;
 mso-level-text:"\(%1\)";
 mso-level-tab-stop:none;
 mso-level-number-position:left;
 margin-left:.75in;
 text-indent:-.25in;}
@list l2
 {mso-list-id:1851018447;
 mso-list-type:hybrid;
 mso-list-template-ids:1469633614 -1303744144 67698713 67698715 67698703 67698713 67698715 67698703 67698713 67698715;}
@list l2:level1
 {mso-level-text:"\(%1\)";
 mso-level-tab-stop:none;
 mso-level-number-position:left;
 margin-left:1.0in;
 text-indent:-.25in;}
ol
 {margin-bottom:0in;}
ul
 {margin-bottom:0in;}
-->








NO. 07-09-00054-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL A

 



MAY
24, 2010

 



 

FRANKIE LEE CADA, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 



 

 FROM THE 64TH DISTRICT COURT OF HALE
COUNTY;

 

NO. A 17878-0812; HONORABLE ROBERT W. KINKAID JR., JUDGE



 



 

Before CAMPBELL
and HANCOCK and PIRTLE, JJ.

 

 

OPINION

 

 

Appellant, Frankie Lee Cada, was indicted for the offense of retaliation[1]
enhanced by one prior felony conviction. 
A jury convicted appellant of the offense as charged, found the
enhancement paragraph true, and sentenced him to confinement in the
Institutional Division of the Texas Department of Criminal Justice for three
years.  Appellant appeals by four issues
contending that the evidence was both legally and factually insufficient and
that the trial court erred in not charging the jury on the lesser-included
offense of assault.  We affirm.

Factual and Procedural Background

            On
November 12, 2008, the Plainview Police Department received a call regarding a
suspicious car at an Allsups convenience store.  The manager of the Allsups,
Arthur Finch, had contacted the police. 
Upon arriving at the scene, officers identified the adult passengers in
the car.  After identifying the
passengers, the police checked each name for outstanding warrants.  One of the adult occupants of the car,
Josephine Cada, appellants wife, had outstanding
warrants.  Mrs. Cada
was taken into custody, and the other occupants of the car were allowed to
leave the scene.  After the arrest of
Mrs. Cada, Finch received a telephone call from
appellant.  During the phone call,
appellant identified himself and threatened to get back at Finch for getting
his wife arrested.  Finch called the
police after receiving the first phone call. 
Within ten minutes of calling the police to report the first phone call,
Finch received a second phone call. 
Finch testified that the caller did not identify himself during the
phone call; however, Finch further testified that he recognized the second
caller as appellant.  During the second
call appellant stated he was behind the store and was going to get Finch.  Finch activated a panic button that notified
the police, and the police immediately went to the Allsups
location.  Based upon information Finch
gave the police, appellant was arrested, indicted, and tried for the offense of
retaliation.  

            At
the conclusion of Finchs testimony the State rested and appellants trial
counsel moved for an instructed verdict because the testimony, did not show
that the action of appellant was a result of Finchs service as a witness.  The trial court denied the motion, and
appellant then presented his witnesses. 
At the conclusion of the testimony, the trial court prepared its
charge.  The trial court charged on the
indicted offense of retaliation and the lesser-included offense of terroristic
threat.  The jury convicted appellant of
retaliation.  The jury subsequently found
that the enhancement paragraph was true and sentenced appellant to confinement
for a period of three years in the ID-TDCJ. 


            Appellant
contends that the evidence is both legally and factually insufficient, and that
the trial court committed reversible error in not giving a lesser-included
charge of assault.[2]  We disagree with appellant and affirm the
judgment of the trial court.

Sufficiency of the Evidence

            Appellant
challenges both the legal and factual sufficiency of the evidence.  Therefore, we are required to conduct an analysis
of the legal sufficiency of the evidence first and then, only if we find the
evidence to be legally sufficient, do we analyze the factual sufficiency of the
evidence.  See Clewis
v. State, 922 S.W.2d 126, 133 (Tex.Crim.App.
1996).

Standard of Review

Legal Sufficiency

In assessing the legal sufficiency of
the evidence, we review all the evidence in the light most favorable to the
verdict to determine whether any rational trier of
fact could have found the essential elements of the offense beyond a reasonable
doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61
L.Ed.2d 560 (1979); Ross v. State, 133 S.W.3d 618, 620 (Tex.Crim.App. 2004). 
In conducting a legal sufficiency review, an appellate court may not sit
as a thirteenth juror, but rather must uphold the jurys verdict unless it is
irrational or unsupported by more than a mere modicum of evidence.  Moreno v. State, 755
S.W.2d 866, 867 (Tex.Crim.App. 1988).  We measure the legal sufficiency of the
evidence against a hypothetically correct jury charge.  See Malik
v. State, 953 S.W.2d 234, 240 (Tex.Crim.App.
1997).

Factual Sufficiency

            When
an appellant challenges the factual sufficiency of the evidence supporting his
conviction, the reviewing court must determine whether, considering all the
evidence in a neutral light, the jury was rationally justified in finding the
appellant guilty beyond a reasonable doubt. 
See Watson v. State, 204 S.W.3d 404,
415 (Tex.Crim.App. 2006).  In performing a factual sufficiency review,
we must give deference to the fact finders determinations if supported by
evidence and may not order a new trial simply because we may disagree with the
verdict.  See id. at 417.  As an
appellate court, we are not justified in ordering a new trial unless there is
some objective basis in the record demonstrating that the great weight and
preponderance of the evidence contradicts the jurys verdict.  See id.  Additionally, an appellate opinion addressing
factual sufficiency must include a discussion of the most important evidence that
appellant claims undermines the jurys verdict.  Sims v. State, 99
S.W.3d 600, 603 (Tex.Crim.App. 2003).  The Texas Court of Criminal Appeals has
recently declared that, when reviewing the evidence for factual sufficiency,
the reviewing court should measure the evidence in a neutral manner against a
hypothetically correct jury charge.  Vega
v. State, 267 S.W.3d 912, 915 (Tex.Crim.App.
2008) (citing Wooley v. State, 273
S.W.3d 260, 268 (Tex.Crim.App. 2008)).

Analysis

            The
indictment against appellant alleges that appellant intentionally and knowingly
threatened harm to Finch in retaliation for the service of Finch as a witness.[3]  Appellant contends that the evidence was
insufficient because the record clearly reflects that, at the time of trial,
Finch had not testified in any official court proceeding.  According to appellants theory, Finch was,
therefore, not a witness.  In support of
this proposition, appellant cites the court to Jones v. State, 628
S.W.2d 51, 55 (Tex.Crim.App. [Panel Op.] 1980).  In Jones, the Texas Court of Criminal
Appeals concluded that the term witness as used in connection with the
retaliation statute meant one who had testified in an official proceeding.  Id. 
However, the holding in Jones is not determinative of the outcome
of our case.  

After the Jones opinion, the
Texas Court of Criminal Appeals was again addressing the issue of the protected
parties within the retaliation statute and noted that while there may be some
overlap among the categories of persons listed, each category is nevertheless
distinct.  Morrow
v. State, 862 S.W.2d 612, 614 (Tex.Crim.App.
1993).  Jones and Morrow
would indicate that appellants contention about the sufficiency of the
evidence should be accepted as correct. 
However, in addition to the cases discussing the various protected
parties within the retaliation statute, we must also consider the allegation
that Finch was a witness, as opposed to a prospective witness, from the
perspective of a hypothetically correct charge and material variance.

As set forth above, the sufficiency
of the evidence is to be measured from the perspective of a hypothetically
correct charge.  Malik, 953 S.W.2d at 240
(legal sufficiency); Vega, 267 S.W.3d at 915 (factual sufficiency).  Such a charge would accurately set out the
law as authorized by the charging instrument. 
See Ortiz v. State, 280 S.W.3d 302, 304 (Tex.App.Amarillo 2008, no pet.).  When applied to the facts of the case before
the court, this hypothetically correct charge appears to support appellants position.  Such a charge would ask the jury if appellant
retaliated against Finch because of his service as a witness.  As reflected in the testimony, Finch had not
yet testified in any formal proceeding at the time of the threats.  However, a closer review leads to the
conclusion that this inquiry, witness vis-a-vis prospective witness does not conclude our
inquiry.  Rather, we must look further
into the issue of variance as set forth by the Texas Court of Criminal Appeals
in Gollihar v. State, 46 S.W.3d 243 (Tex.Crim.App. 2001). 
A hypothetically correct charge need not incorporate allegations that
give rise to immaterial variances.  Id. at 256.  

In discussing the issue of variance
between the wording of an indictment and the evidence presented at trial, the
court in Gollihar stated that such a variance
is fatal only if it is material and prejudices [the defendants] substantial
rights.  Id. at
257.  To determine whether the
variance prejudices the defendants substantial rights, we must make a two-part
inquiry: first, whether the indictment informs the defendant of the charge
against him sufficiently to allow him to prepare an adequate defense; and,
secondly, whether prosecution under the deficiently drawn indictment would
subject the defendant to the risk of being prosecuted later for the same
crime.  Id.  

Our review of the indictment leads to
the conclusion that this is not a variance in the manner and means of
committing the crime of retaliation.  See Curry v. State, 30 S.W.3d 394, 403 (Tex.Crim.App. 2000) (discussing allegations that vary the
manner and means of commission of offense); Planter v. State, 9 S.W.3d
156, 159 n.5 (Tex.Crim.App. 2000) (same).  Rather, what we are dealing with here is a
variance regarding the status of the protected person.  See Morrow
862 S.W.2d at 614-15 (discussing the categories of protected persons relevant
to the retaliation statute).  

Applying the test for variance in the
evidentiary sufficiency arena, we find that the evidence at trial is that Finch
reported a suspicious car.  Thereafter,
the Plainview police 
came out to investigate. 
As part of the police investigation, all adults in the vehicle were
identified.  The identification of
appellants wife resulted in the discovery of outstanding warrants for her
arrest.  After her arrest, appellant
called Finch on two separate occasions and threatened him.  At the time of trial, Finch had not testified
in any official court proceeding related to Mrs. Cadas
arrest.  

Applying the variance test to these
facts yields the determination that, there is a variance between the allegation
in the indictment of Finch as a witness and the proof that he was a prospective
witness.  As analyzed by our sister
court, the Sixth District Court of Appeals, such a variance is not
material.  See Martin v. State,
No. 06-03-00139-CR, 2004 Tex. App. LEXIS 7142 at *23-*24 (Tex.App.Texarkana,
Aug. 11, 2004, no pet.) (not designated for
publication).  The Martin court
relied heavily on the opinion of this Court in Hudspeth v. State, 31
S.W.3d 409, 412 (Tex.App.Amarillo 2000, pet refd.).  In Hudspeth,
we said that the variance between the allegation of one classification of
protected person for the victim and the proof of a different classification of
protected person was simply irrelevant.  Id.  

We agree with the Hudspeth
opinions ultimate conclusion and read its conclusion that the variance was
irrelevant as a shorthand method of saying that the variance was not
material.  Appellant has never contended
that the variance at issue has resulted in an inability to adequately mount a
defense.  See Gollihar,
46 S.W.3d at 257. 
Likewise, there is no danger of a second prosecution for the same
offense as a result of the variance at issue. 
See id.  These
conclusions lead to the ultimate conclusion that the variance was not
material.  See id.

When reviewing an insufficient
evidence contention based on a variance between pleading and proof, only a
material variance will render the evidence insufficient.  See id.  Having determined that the variance was not
material, we reach the conclusion that the evidence was legally and factually
sufficient under each test.   Jackson, 443 U.S. 319 (legal sufficiency); Ross, 133
S.W.3d at 620 (same); and Watson, 204 S.W.3d at 415 (factual
sufficiency).  Accordingly, we
overrule appellants first, second and third issues.

Lesser-Included
Offense of Assault

            Appellant
next contends that the trial court erred in not giving a lesser-included charge
for the offense of assault by threatening to cause imminent bodily injury.  However, this issue has previously been
decided adverse to appellant in Helleson v.
State, 5 S.W.3d 393, 396 (Tex.App.Fort Worth
1999, pet. refd) (determining that retaliation does
not require that the threat to harm in retaliation for the victims public
service be imminent and this element of assault by threat is not included
within the necessary proof to establish retaliation).  Appellants fourth issue is overruled.

Conclusion

            Having
overruled appellants issues, we affirm the judgment of the trial court.

 

                                                                                                Mackey
K. Hancock

                                                                                                            Justice

 

Publish.  








 











[1]
See
Tex. Penal Code Ann. § 36.06(a)(1)(A) (Vernon Supp. 2009).





[2]
Appellant also contends the trial court erred in
denying his motion for an instructed verdict. 
We treat such an allegation as a challenge to the legal sufficiency of
the evidence.  Castellon
v. State, 302 S.W.3d 568, 575 (Tex.App.Amarillo
2009, no pet.).





[3] §36.06 Obstruction or Retaliation

 

(a) 
A person commits
an offense if he intentionally or knowingly harms or threatens to harm another
by an unlawful act:

 

(1) 
In retaliation
for or on account of the service or status of another as a:

 

(A)
public servant,
witness, or prospective witness, or informant;

 

Tex.
Penal Code Ann.  § 36.06(a)(1)(A) (Vernon Supp. 2009).